**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

CARDSMITHS, LLC,

Plaintiff,

vs. Case No. 26-cv-2448

CARDSTON ENTERPRISES INC.,

Defendant.
________________________________/

## COMPLAINT

Plaintiff, Cardsmiths, LLC ("Cardsmiths"), through its undersigned counsel, sues Defendant Cardston Enterprises Inc. ("Cardston") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for breach of contract and related relief arising from Cardston's failure to perform its agreement to manufacture and produce Cardsmiths' Currency Series 6 trading card set (the "Set"). Cardston — an experienced trading-card printer that Cardsmiths selected because of its represented expertise — agreed to complete production of the Set within ten weeks, accepted a $236,000 deposit, and Cardsmiths' cards and packaging materials to do so. It then failed to deliver a conforming, high-quality Set on time or at all.

2. The Set was designed, marketed, and timed as an America250 / 250th Anniversary product, and much of its commercial viability depended on reaching the market during that commemoration. Because Cardston failed to complete the

Set on time, the Set can no longer serve its America250 purpose and that time-bound business opportunity has been lost — a loss Cardston foresaw or should have foreseen at the time of contracting given its specialized knowledge of the trading-card market, its knowledge of the Set's America250 tie-in and Cardsmiths' planned sales channels and events, and the parties' repeated statements that time was of the essence for these reasons.

3. The viability of the Set as an America250 aspect of the Set has been largely lost as a result of Cardston's delay, and the lost value of that business opportunity exceeds several million dollars.

**PARTIES**

4. Plaintiff Cardsmiths, LLC is a limited liability company organized under the laws of the State of Florida. Cardsmiths conducts its business in Florida through one of its principals, a citizen of this judicial district who resides in this district.

5. The members of Cardsmiths are Kung Pao, LLC and Catalyst Sales Group, LLC.

6. The sole member of Kung Pao, LLC is an individual who is a citizen of the State of Nevada.

7. The members of Catalyst Sales Group, LLC are individuals who are citizens of the State of Florida.

8. Neither Kung Pao, LLC nor Catalyst Sales Group, LLC has any member other than those identified above. Accordingly, for purposes of diversity jurisdiction, Cardsmiths is a citizen of the States of Nevada and Florida.

9. Defendant Cardston Enterprises Inc. is a Canadian corporation organized and existing under the laws of the Province of Quebec, Canada, with its principal place of business at 151 Alston Avenue, Pointe-Claire, Quebec, Canada, and a manufacturing facility at 11 Plateau Avenue, Pointe-Claire, Quebec, Canada. Cardston is therefore a citizen and subject of a foreign state.

**JURISDICTION AND VENUE**

10. As set forth herein, Plaintiff is seeking several million dollars of damages from Defendant.

11. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2) because the parties are citizens of different states and the amount in controversy is greater than $75,000 exclusive of fees, interest, and costs.

12. This Court has personal jurisdiction over Cardston under Florida's long-arm statute, section 48.193, Florida Statutes, which reaches a nonresident that operates, conducts, engages in, or carries on a business venture in Florida, and that breaches a contract in Florida by failing to perform acts required to be performed in Florida.

13. This dispute arises directly out of Cardston's Florida-directed activities in that Cardston: (a) solicited and entered into the Agreement with

Cardsmiths, a Florida limited liability company, dealing principally with Cardsmiths' principal in Florida; (b) directed near-daily communications, by telephone and electronic mail, to Cardsmiths' principal in Florida throughout the negotiation and performance of the Agreement; and (c) mailed and shipped sample cards and other materials to Cardsmiths' principal in Florida in connection with the Agreement. At all times material hereto, Cardston was aware that Cardsmiths' principal was a Florida citizen and that he was in Florida when the entity communicated with him.

14. Through these purposeful and sustained contacts directed into Florida, Cardston purposefully availed itself of the privilege of conducting business in Florida, established minimum contacts with Florida such that it should reasonably have anticipated being haled into court here, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

15. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including Cardston's near-daily communications directed to, and its shipment of samples and materials to Cardsmiths' principal in Florida.

16. Venue is also proper under 28 U.S.C. § 1391(c)(3) because Cardston is not a resident of the United States and may be sued in any judicial district.


EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

## FACTUAL BACKGROUND

### The Trading Card Market and the Importance of Print Quality

17. Collectible trading cards are a large and rapidly growing market. The value of a card to a consumer depends heavily on its condition and, in particular, on the quality of its printing.

18. A central feature of the market is third-party grading whereby collectors submit cards to neutral, independent grading companies, which evaluate each card and assign it a grade on a numeric scale. A card's grade turns substantially on print quality including surface, centering, color, foil application, and the absence of print defects. Higher graded cards are more collectible to the consuming public.

19. Because the grade drives value, collectors seek cards capable of achieving the highest grades, and exceptional print quality is demanded both by trading-card collectors generally and by the collectors who purchase Cardsmiths' products. Cardsmiths' reputation and the value of its limited-edition sets depend on meeting that demand.

### Cardston's Specialized Expertise and Its Representations to Cardsmiths

20. Cardston is an experienced commercial printer of collectible trading cards and has produced trading cards for many trading-card companies. By virtue of that experience, Cardston has specialized knowledge of the print-quality


EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

standards that trading-card collectors and grading companies demand and of the time-sensitive nature of trading-card releases.

21. Cardston represented its trading-card printing experience and its ability to produce high-quality trading cards to Cardsmiths as a reason that Cardsmiths should select Cardston to produce the Set. Cardston reinforced those representations by producing sample cards in the spring of 2026 that met the quality Cardsmiths required.

22. Cardsmiths selected Cardston and entrusted the Set to it in reliance on Cardston's represented experience, specialized knowledge, and demonstrated sample quality, and relied on Cardston's skill and judgment to produce a Set fit for sale to Cardsmiths' collector customers.

23. Given Cardston's specialized experience producing high-quality trading cards, the need for both timely delivery and exceptional print quality was known to, and foreseeable by, Cardston at the time the parties formed the Agreement.

**The Currency Series 6 Set**

24. The Currency Series 6 Set was designed as a premium, limited-edition release tied to the 2026 "America250" / 250th Anniversary of the United States commemoration. Its commercial value largely depended on reaching the market within the window surrounding that commemoration.


EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

**The Agreement and Its Time-Sensitive Purpose**

25. On or about May 22, 2026, Cardsmiths and Cardston entered into an agreement under which Cardston would manufacture and produce the Set and would complete production within ten weeks (the "Agreement").

26. The parties formed and carried out the Agreement through telephone calls, video conferences, in-person meetings, and electronic mail. The Agreement was not reduced to a single integrated written document.

27. In connection with the Agreement, Cardston was hired to print, cut, collate, serial-number, ensure quality control, and randomly pack out trading cards into foil packs which were then to be placed in two different sized retail packages for distribution. Throughout the printing and packaging process, Cardston was also required to submit proofs of the trading cards for approval.

28. In reliance on the Agreement, Cardsmiths paid Cardston a deposit of $236,000 on May 29, 2026 and delivered to Cardston cards produced by third parties to be integrated with the Cardston printed cards together with packaging and security materials needed to produce the Set.

29. At the time the parties formed the Agreement, Cardston knew the particular purpose for which the Set was required and that it was acutely time-sensitive. Cardston knew the Set was the 2026 250th Anniversary Set and that Cardsmiths needed to complete it and get it into its customers' hands.


EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

30. The Set was supposed to ship after key marketing events for Cardsmiths such as the 2026 San Diego Comic-Con.

31. The commercial value of the Set depended on reaching the market within the America250 window as this was the overarching theme for the Set. Throughout performance, Cardsmiths repeatedly reminded Cardston that time was of the essence.

**Cardston's Failure to Meet Deadlines**

32. The ten-week completion period expired on or about July 31, 2026.

33. Cardston did not complete the Set within ten weeks. Instead, it repeatedly represented, and then failed to meet, a series of revised production and pack-out targets in July and August 2026.

34. By late August 2026, the project remained incomplete, and critical components — including the Gemstone Refractor cards and the Redemption Cards — were still unresolved and being retested or reprinted.

35. As of September 30, 2026, more than eighteen weeks after the Agreement was formed and roughly two months after the ten-week deadline had passed, the project remained only partially completed. Cardston's own estimated completion date had slipped to November 18, 2026 — a date Cardsmiths did not accept and did not believe Cardston could meet.

**Cardston's Failure to Produce Conforming, High-Quality Goods**

36. Cardston also failed to produce cards meeting the print quality it had represented and to which it had committed. None of the Series 6 samples or production pieces Cardston produced came close to the quality of the samples that had induced the engagement.

37. Among other defects, Cardston was unable to achieve an acceptable result on the "Gemstone Refractor" cards. Those cards experienced offset, registration, lamination, and ink-lift failures requiring reprints; and produced Redemption Cards whose code application created security and legibility problems that required the cards to be reprinted.

38. The resulting cards did not match the specification Cardsmiths' customers were accustomed to, and cards of this quality would not achieve the high grades that Cardsmiths' collector customers demand.

**Cardsmiths' Cease-Production Instruction, Termination, and Demand**

39. In early September 2026, Cardsmiths directed Cardston to cease production of the Set and to retain all product created to date. Despite these requests, Cardston continued to attempt to produce the cards.

40. On September 30, 2026, Cardsmiths, through counsel, formally notified Cardston of its material and continuing breach, terminated the Agreement, directed Cardston to cease production, and demanded return of the full $236,000 deposit and all cards, packaging materials, and other property Cardsmiths had provided.


EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

41. Cardston has not returned the deposit or Cardsmiths' property, and Cardsmiths has been further damaged as a result.

**COUNT I**
**BREACH OF CONTRACT UNDER THE CISG**
**(Non-Conformity and Late Delivery)**

42. Cardsmiths realleges and incorporates paragraphs 1 through 40 as if fully set forth herein.

43. The Agreement is a contract for the sale of goods — the Set — between parties whose places of business are in different Contracting States to the United Nations Convention on Contracts for the International Sale of Goods ("CISG"). The parties did not expressly exclude the CISG. The CISG therefore governs the Agreement.

44. Under the CISG, Cardston was required to deliver goods of the quantity, quality, and description required by the Agreement, including goods possessing the qualities of the samples Cardston had held out to Cardsmiths, and to deliver them within the ten-week period fixed by the Agreement.

45. Cardston breached the Agreement by failing to deliver the Set within the ten-week period, by failing to deliver a conforming Set at all, and by producing goods whose print quality did not conform to the Agreement or to the approved samples.

46. Cardston's breach was fundamental: its delay and nonconforming performance substantially deprived Cardsmiths of what it was entitled to expect


EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

under the Agreement — a conforming, high-quality Set delivered in time for the America250 market window — a result Cardston foresaw or should have foreseen. Cardsmiths performed its obligations, including payment of the $236,000 deposit and provision of cards and packaging materials, or was excused from performance.

47. Cardsmiths terminated the Agreement following Cardston's fundamental breach and is entitled under the CISG to restitution of the $236,000 deposit, return of the property it supplied, and damages measured by its full loss, including the consequential damages alleged below.

WHEREFORE, Cardsmiths respectfully requests that the Court enter judgment in its favor and against Cardston on Count I, awarding restitution of the $236,000 deposit, return of Cardsmiths' property or its value, compensatory and consequential damages, interest, costs, and such other relief as the Court deems just and proper.

**COUNT II**
**BREACH OF CONTRACT UNDER THE CISG**
**(Fitness for a Particular Purpose)**

48. Cardsmiths realleges and incorporates paragraphs 1 through 40 as if fully set forth herein.

49. Under the CISG, goods do not conform to the contract unless they are fit for any particular purpose expressly or impliedly made known to the seller at the time of the conclusion of the contract, except where the buyer did not rely, or it was unreasonable to rely, on the seller's skill and judgment.


EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

50. Cardston knew, at the time the parties formed the Agreement, the particular purpose for which the Set was required: a premium, limited-edition product of exceptional print quality, conforming to the approved samples, capable of achieving the high third-party grades that Cardsmiths' collector customers demand, and fit to reach the market within the time-sensitive America250 window and related events.

51. Cardsmiths reasonably relied on Cardston's specialized skill and judgment as an experienced trading-card printer to produce a Set fit for that particular purpose, as Cardston had represented and as its spring 2026 samples had demonstrated.

52. The Set Cardston produced was not fit for that particular purpose. Cardston thereby breached the Agreement, and Cardsmiths has been damaged as alleged below.

WHEREFORE, Cardsmiths respectfully requests that the Court enter judgment in its favor and against Cardston on Count II, awarding restitution of the $236,000 deposit, return of Cardsmiths' property or its value, compensatory and consequential damages, interest, costs, and such other relief as the Court deems just and proper.

**COUNT III**
**BREACH OF CONTRACT (FLORIDA COMMON LAW)**
**(Pleaded in the Alternative)**

53. Cardsmiths realleges and incorporates paragraphs 1 through 40 as if fully set forth herein. This Count is pleaded in the alternative to Counts I and II, in the event the CISG is held not to govern the Agreement — including on the ground that Cardsmiths supplied a substantial part of the materials necessary for production or that the Agreement is predominantly one for services.

54. The Agreement is a valid and enforceable contract. Cardsmiths performed its obligations, including payment of the $236,000 deposit and provision of cards and packaging materials, or was excused from performance.

55. Cardston materially breached the Agreement by failing to complete production of the Set within ten weeks, failing to deliver the Set, and failing to produce a conforming Set of the promised print quality.

56. As a direct and proximate result of Cardston's breach, Cardsmiths has been damaged in an amount to be proven at trial, including the $236,000 deposit, the value of the property provided, and the consequential damages alleged below.

WHEREFORE, Cardsmiths respectfully requests that the Court enter judgment in its favor and against Cardston on Count III, awarding compensatory and consequential damages, restitution of the $236,000 deposit, return of Cardsmiths' property or its value, interest, costs, and such other relief as the Court deems just and proper.


EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

**COUNT IV**
**BREACH OF THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**
**(Pleaded in the Alternative)**

57. Cardsmiths realleges and incorporates paragraphs 1 through 40 as if fully set forth herein. This Count is pleaded in the alternative, to the extent the Agreement is governed by Article 2 of Florida's Uniform Commercial Code rather than the CISG.

58. Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required, and that the buyer is relying on the seller's skill or judgment to furnish suitable goods, Florida's Uniform Commercial Code implies a warranty that the goods will be fit for that purpose.

59. At the time of contracting, Cardston — an experienced trading-card printer that had produced cards for many trading-card companies — had reason to know the particular purpose for which the Set was required, including the exceptional print quality that collectors and grading companies demand and the America250 market window, and had reason to know that Cardsmiths was relying on Cardston's skill and judgment to produce suitable goods. Cardsmiths so relied.

60. The Set Cardston produced was not fit for that particular purpose, breaching the implied warranty, and Cardsmiths has been damaged as alleged below.


EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

WHEREFORE, Cardsmiths respectfully requests that the Court enter judgment in its favor and against Cardston on Count IV, awarding compensatory and consequential damages, restitution of the $236,000 deposit, interest, costs, and such other relief as the Court deems just and proper.

**COUNT V**
**PROMISSORY ESTOPPEL**
**(Pleaded in the Alternative)**

61. Cardsmiths realleges and incorporates paragraphs 1 through 40 as if fully set forth herein. This Count is pleaded in the alternative, in the event any element of an enforceable contract is found lacking.

62. Cardston made unambiguous promises to Cardsmiths, including that it would produce a conforming, high-quality Set and complete production within ten weeks.

63. Cardsmiths reasonably and justifiably relied on those promises to its detriment by paying Cardston a $236,000 deposit, delivering cards and packaging materials, and forgoing other production arrangements for the time-sensitive Set.

64. Cardston reasonably expected its promises to induce such reliance, and injustice can be avoided only by enforcing the promises. Cardsmiths has been damaged as a result.

WHEREFORE, Cardsmiths respectfully requests that the Court enter judgment in its favor and against Cardston on Count V, awarding damages,

restitution, interest, costs, and such other relief as the Court deems just and proper.

**COUNT VI**
**UNJUST ENRICHMENT**
**(Pleaded in the Alternative)**

65. Cardsmiths realleges and incorporates paragraphs 1 through 40 as if fully set forth herein. This Count is pleaded in the alternative.

66. Cardsmiths conferred a benefit on Cardston by paying a $236,000 deposit and delivering cards and packaging materials.

67. Cardston has retained the deposit and property without delivering the conforming Set it promised. Cardston's retention of the deposit and property, for which it did not perform, is unjust.

68. Cardston should be required to make restitution of the $236,000 deposit and to return Cardsmiths' property, or pay its value.

WHEREFORE, Cardsmiths respectfully requests that the Court enter judgment in its favor and against Cardston on Count VI, awarding restitution of the $236,000 deposit, return of Cardsmiths' property or its value, interest, costs, and such other relief as the Court deems just and proper.

**DAMAGES**

69. Cardsmiths realleges and incorporates paragraphs 1 through 40 as if fully set forth herein.

70. As a direct and foreseeable consequence of Cardston's breaches, Cardsmiths has suffered damages that place it far short of the position it would have occupied had Cardston performed, including: (a) the $236,000 deposit paid to Cardston; (b) the value of the third-party cards and packaging materials Cardsmiths delivered to Cardston; (c) the lost profits of the America250 business opportunity, or alternatively, the cost associated with the project; and (d) incidental and consequential damages, including costs incurred in reliance on Cardston's performance and in mitigating the harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Cardsmiths, LLC respectfully requests that this Court enter judgment in its favor and against Defendant Cardston Enterprises Inc. and award: (a) restitution and return of the $236,000 deposit; (b) return of all cards, packaging materials, and other property Cardsmiths provided to Cardston, or the value thereof; (c) compensatory damages, including consequential damages measured by the lost value of the America250 business opportunity, in an amount to be proven at trial but exceeding several million dollars; (d) pre-judgment and post-judgment interest as allowed by law; (e) costs of suit and attorneys' fees to the extent permitted by law; and (f) such other and further relief as the Court deems just and proper.


EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

**JURY DEMAND**

Cardsmiths demands a trial by jury on all issues so triable.

Dated: October 19, 2026

Respectfully submitted,

/s/ Evan B. Berger
Evan B. Berger, FBN 71479
evan@bergerlawpa.com
Evan Berger Law, P.A.
4800 North Federal Highway, Suite B200
Boca Raton, Florida 33431
T: (954) 380-4343 / F: (954) 380-4343
*Counsel for Plaintiff Cardsmiths, LLC*